T.C. Memo. 2009-86

UNITED STATES TAX COURT

DAVID HARRIS SHER AND CATHERINE GAIL NEMSER, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 27548-07L.                Filed April 28, 2009.

In April 1999 Ps requested an extension of time to
file their 1998 Federal income tax return and
separately submitted a $70,000 estimated tax payment.
Although Ps' 1998 return includes signature dates in
July 1999, R did not receive the return until 2004.  R
assessed the tax reflected on the return, along with
additions to tax and interest, in 2004.

In October 2000 Ps filed their 1999 return and
paid their 1999 taxes in full.  In November 2000, R
refunded the $70,000 estimated tax payment that R
received in April 1999 and had credited to Ps' account
for 1999.

After receiving a notice of deficiency for 2000,
Ps filed a 2000 return.  R processed this return and
assessed tax, additions to tax, and interest in
December 2002.  Ps later conceded that they omitted
income from their 2000 return and agreed to an
additional assessment.

Ps submitted an offer-in-compromise (OIC) seeking relief based upon doubt as to collectibility and doubt as to liability, and R rejected it.  R's Appeals Office sustained the rejection and rejected a second OIC, affirming that Ps' reasonable collection potential exceeded the amounts offered and concluding that Ps' liability was properly determined and assessed.

R filed a Federal tax lien and notified Ps.  Ps requested a CDP hearing, seeking relief from interest and penalties.  R's settlement officer sustained the filing of the Federal tax lien.

Held:  R's determination is sustained, and Ps are not entitled to any abatement of interest.

David Harris Sher and Catherine Gail Nemser, pro sese.

Frederick C. Mutter, for respondent.

MEMORANDUM OPINION

PANUTHOS, Chief Special Trial Judge:  This case is before the Court on petitioners' request for judicial review of an Internal Revenue Service (IRS) determination to sustain a Federal tax lien filing.

Unless otherwise indicated, all section references are to the Internal Revenue Code, as amended.

Background

Some of the facts have been stipulated, and we so find. Petitioners resided in New York when they filed the petition. Petitioners were married at all relevant times, and they filed joint Federal income tax returns for each year in issue.

On April 15, 1999, the IRS received petitioners' request for an extension of time to file their Federal income tax return for taxable year 1998. On April 22, 1999, the IRS received a $70,000 estimated tax payment from petitioners. Petitioners mailed the estimated tax payment separately from the extension request and did not direct the IRS to apply the $70,000 to any particular tax year. The IRS applied the estimated tax payment toward petitioners' account for taxable year 1999.

The record includes petitioners' 1998 Form 1040, U.S. Individual Income Tax Return. Petitioners' return preparer dated this return July 6, 1999, and petitioners dated their signatures July 10, 1999. The return reports total tax due of $86,417, withholding credits of $5,803, estimated tax payments of $70,000, and a balance due of $10,614. IRS records reflect petitioners' 1998 extension request and the 1998 withholding credit on April 15, 1999. However, IRS records further reflect that the IRS received and processed petitioners' 1998 return on February 26, 2004. The IRS assessed tax, additions to tax, and interest as follows:

| | |
|---|---|
| Total tax for 1998 | $86,417.00 |
| Failure to file addition to tax | 18,138.15 |
| Failure to pay addition to tax | 20,153.50 |
| Interest | 40,111.38 |

Petitioners filed their 1999 Federal income tax return, with an extension, on October 12, 2000, and included full payment of

their 1999 liability with the return. On November 20, 2000, the IRS refunded $70,000 to petitioners as an overpayment for 1999.

With the $70,000 income tax refund, the IRS included a statement explaining that the sum of petitioners' 1999 withholding tax credits and the payment submitted with the 1999 return exactly equaled their 1999 tax liability. The statement listed a $70,000 estimated tax payment made on April 22, 1999, and credited toward taxable year 1999.[1]

On receipt of the $70,000 income tax refund check in November 2000, petitioners called the IRS to ask whether there had been some mistake and whether they should cash the check. Apparently because the IRS computer system did not have any record of a liability for 1998 (because the IRS had not yet received or processed a return from petitioners for 1998), an IRS employee told petitioners that the IRS did not have any record of petitioners' having any outstanding liability, that petitioners had overpaid their 1999 taxes, and that the refund was valid. Petitioners did not inform the IRS at any time before cashing the refund check that they wanted the IRS to apply that $70,000 payment to their account for 1998 rather than 1999.

The IRS issued petitioners a notice of deficiency for taxable year 2000, after which petitioners filed a Form 1040 for

---

[1] Petitioners' only estimated tax payment in 1999 was the $70,000 payment the Internal Revenue Service (IRS) received April 22, 1999, and credited toward petitioners' account for 1999.

2000.  The IRS received this late-filed return on August 3, 2002, processed it, and assessed the following on December 9, 2002:

| | |
|---|---|
| Total tax for 2000 | $22,768.00 |
| Failure to file addition to tax | 3,561.30 |
| Failure to pay addition to tax | 1,187.10 |
| Interest | 1,268.93 |

On December 31, 2002, the IRS informed petitioners that their late-filed 2000 return failed to include certain income. Petitioners ultimately agreed with the IRS that they underreported their income for 2000, and they agreed to the assessment of additional tax, additions to tax, and interest. The IRS assessed the following on December 8, 2003:

| | |
|---|---|
| Additional tax assessed for 2000 | $20,006.00 |
| Additional failure to file addition to tax | 8,767.25 |
| Additional failure to pay addition to tax | 838.40 |
| Additional interest | 4,524.74 |

Petitioners submitted a Form 656, Offer in Compromise (OIC), dated January 10, 2004, in response to the IRS's determination of unreported income on petitioners' 2000 tax return.  This OIC does not state which liabilities petitioners sought to compromise, but petitioners offered $17,000 and claimed as grounds for compromise both doubt as to collectibility (DATC) and doubt as to liability (DATL).  It appears from the record that the IRS informed petitioners that this OIC could not be processed because the IRS did not have any record of petitioners' filing a tax return for 1998.  Petitioners then submitted a 1998 Form 1040, which the IRS processed on February 26, 2004.

Petitioners submitted another OIC in March 2004, again offering to pay $17,000 and claiming both DATC and DATL, but this time listing tax years 1998 and 2000.  They explained in a letter to the IRS that it had erroneously applied the $70,000 estimated tax payment they made in April 1999 to taxable year 1999 and erroneously refunded that amount to petitioners in November 2000.  Petitioners also explained that they had a large net operating loss (NOL) that they proposed carrying back to offset their 1998 liability.

On January 3, 2005, the OIC reviewer informed petitioners that if there was an error with the application or refund of the estimated tax payment, petitioners might avoided some penalties and interest if they had taken action to inform the IRS of the error when it occurred rather than accepting the refund and cashing the check.  The OIC reviewer advised petitioners that the IRS could not agree to petitioners' proposal to reduce their NOL by the amount of the refunded estimated tax payment.  He also informed petitioners that they were not entitled to relief under either DATC or DATL and that formal notification of the rejection of their offer would follow.

On March 1, 2005, the IRS rejected petitioners' OIC.  The OIC rejection letter recited that an analysis of petitioners' ability to pay dictated rejecting the $17,000 offer because petitioners' reasonable collection potential (RCP) was

$161,708.07.  The letter also explained that petitioners did not present any information indicating that the amount of tax assessed for 1998 or 2000 was incorrect; rather, petitioners claimed they were not liable for interest and penalties which accrued on the $70,000 portion of their 1998 tax liability that they intended to pay.  The letter further stated that "Your failure to return this refund contributed to the accrual of penalties and interest."  The IRS considered both collectibility and liability in rejecting petitioners' OIC.

Petitioners timely appealed the rejection of their OIC, challenging the DATC and the DATL conclusions.  They complained of two IRS errors:  Refunding the $70,000 estimated tax payment; and telling petitioners they had no tax liability.  Petitioners also complained that the IRS notified them about the taxes due for 1998 nearly 5 years after they made the estimated tax payment in April 1999.  Petitioners sought relief from interest and additions to tax due to the passage of time and due to the errors they ascribe to the IRS.  Petitioners also argued that the IRS collectibility calculations did not properly account for the legitimate expenses of living in New York.

In November 2005, apparently as part of the appeal of the rejection of their $17,000 OIC, petitioners offered $28,000 to settle their liabilities for 1998 and 2000, again asserting DATC and DATL.  Petitioners made arguments similar to those in their

OIC appeal, and they did not assert that they filed their 1998 tax return before February 2004.

On February 9, 2006, the IRS Appeals Office determined that the tax liability was legally due and that petitioners' RCP was $139,277. Appeals noted that the 1998 return was filed February 26, 2004, well after petitioners fully paid their 1999 taxes and received the refund and also well after an IRS employee informed petitioners in 2000 that IRS records indicated that petitioners did not have any outstanding liability. Appeals sustained the rejection of the earlier OIC and rejected the new OIC.

On April 24, 2007, the IRS mailed a Notice of Federal Tax Lien Filing and Your Right to a Hearing Under IRC 6320 (filing notice) to petitioners. The IRS prepared the tax lien on April 13, 2007, and mailed a notice of Federal tax lien (NFTL) to New York County on April 18, 2007. The filing notice states that the lien was filed on April 17, 2007.[2]

Petitioners filed a Form 12153, Request for a Collection Due Process or Equivalent Hearing, on May 8, 2007, challenging the lien filing for their liabilities for 1998 and 2000.[3] On that form, petitioners indicated that they sought an OIC as a

---

[2] New York County recorded the notice of Federal tax lien on May 14, 2007.

[3] The notice of Federal tax lien listed liabilities of $143,164.03 for 1998, $51,740.72 for 2000, and $956.07 for 2003. Petitioners did not challenge the lien filing for 2003 in their collection hearing request.

collection alternative and withdrawal of the lien because: "1) Notification by IRS was late. 2) Amount assessed is wrong. 3) We dispute liability for interest and penalties."

In an attachment to their collection hearing request, petitioners asserted that the IRS failed to notify them within 5 days of filing the lien, and they challenged the underlying tax liability reflected in the filing notice for 1998 and 2000. Petitioners' challenge to the underlying liability for 1998 involved the estimated tax payment that the IRS refunded, the interest and additions to tax on that amount, and the fact that the IRS did not demand payment of their liability for 1998 until 2004. Petitioners' challenge to the liability for 2000 concerned the application of their subsequent year tax refunds. They complain that the IRS applied some of those refunds to 1998 and some to 2000. They also asserted that Appeals finally rejected their OIC on February 9, 2006, but that, as a result of delays in transferring the file from Appeals to Collections, the IRS did not send a new tax due bill until March 12, 2007; that they were told that interest and additions to tax would not accrue during the OIC process; and that they are not liable for all of the assessed and accrued interest and additions to tax.

The settlement officer (SO) assigned to petitioners' collection hearing instructed petitioners to submit certain information required for her to consider collection

alternative(s).  The SO informed petitioners that she could not consider challenges to the underlying tax liability for either 1998 or 2000 because petitioners received a notice of deficiency and/or had prior opportunities to dispute their liability.  She scheduled a telephone conference with petitioners for October 30, 2007.

Petitioners did not submit any of the information the SO requested, and petitioners informed the SO during the collection hearing that they wished to pursue their case in court. Following the hearing, the IRS issued a Notice of Determination Concerning Collection Action(s) Under Section 6320 and/or 6330 (notice of determination), dated November 2, 2007.  The SO recited in the notice of determination that petitioners did not provide a statement detailing any collection alternative sought and also did not submit the financial information required for her to consider collection alternatives.  The SO explained that she verified that the applicable legal and administrative procedures were followed in the issuance of the Federal tax lien; that she considered the issues petitioners raised in their hearing request and during the conference, and that petitioners' arguments did not support the IRS's withdrawing the lien; that she could not consider challenges to the underlying tax liability because petitioners had prior opportunities to dispute the liability at issue; and that she balanced the need for efficient

collection with petitioners' concerns that collection be no more intrusive than necessary. The IRS sustained the filing of the NFTL.

In their petition, petitioners assert:

I request a hearing to establish important facts and to require the IRS to remove interest and penalties from its collection action for the tax year 1998. During the hearing I intend to bring evidence of the following problems with the IRS collection action. 1) That the IRS in filing for a federal tax lien failed to obey proper procedure by not notifying me in writing 5 business days after the filing of a lien. 2) That the IRS has not provided an accurate accounting of liability. 3) That the IRS applied penalties and interest charges in a capricious fashion and that it cannot account for the numbers. 4) That interest and penalties should not have been applied at all considering that late payment of 1998 tax bill was due entirely to IRS error. 4) That the IRS has on a number of occasions misrepresented material facts to us that harmed our situation and led to greater liability. (A detailed explanation can be found on attached request for due process hearing).

Petitioners alleged at trial that they filed their 1998 return in 1999. This was the first time this allegation had been made. Petitioners also asserted that the IRS failed to timely notify them of the lien filing, and they sought to challenge the interest and penalty determinations.[4] Petitioners acknowledge their principal tax liabilities but assert that only reducing the additions to tax and interest can correct the IRS's errors.

_____

[4] As noted, the IRS assessed taxes, interest, and additions to tax for failure to file and failure to pay. It has not assessed any penalties for either 1998 or 2000.

The issue for decision is whether respondent abused his discretion in upholding the filing of the NFTL and denying petitioners' request for an abatement of interest.

## Discussion

On the record before us, we find that, although petitioners' 1998 return bears signature dates in 1999, petitioners did not file the 1998 return until 2004.

### I.  Review of Collection Determination

Pursuant to sections 6320(c) and 6330(d)(1), we have jurisdiction to review the IRS's determination that the NFTL was properly filed.

In reviewing the Commissioner's decision to sustain collection actions, where tax liability is properly at issue, the Court reviews the Commissioner's determination of tax liability de novo.  Sego v. Commissioner, 114 T.C. 604, 610 (2000); Goza v. Commissioner, 114 T.C. 176, 181-182 (2000).  The Court reviews determinations regarding proposed collection actions for abuse of discretion.  Sego v. Commissioner, supra at 610; Goza v. Commissioner, supra at 182.  An abuse of discretion occurs when the exercise of discretion is without sound basis in fact or law.  Murphy v. Commissioner, 125 T.C. 301, 308 (2005), affd. 469 F.3d 27 (1st Cir. 2006).

At the collection hearing, a taxpayer may raise any relevant issues relating to the unpaid tax or lien filing, including

spousal defenses, challenges to the appropriateness of the collection actions, and offers of collection alternatives. In addition, he may challenge the existence or amount of the underlying tax liability, but only if he did not receive a notice of deficiency or otherwise have an opportunity to dispute such liability. Sec. 6330(c)(2)(B).

In making a determination following a collection hearing, the IRS must consider: (1) Whether the requirements of any applicable law or administrative procedure have been met, (2) any relevant issues the taxpayer raised, and (3) whether the proposed collection action balances the need for efficient collection with legitimate concerns that the collection action be no more intrusive than necessary. Sec. 6330(c)(3).

## II. Procedural Error

At trial petitioners challenged the timing of the filing notice, arguing that the IRS failed to notify them within 5 days of the date the IRS filed the tax lien as required by section 6320(a)(2).

Although the IRS prepared the tax lien on April 13, 2007, the filing notice states that the IRS filed the tax lien on April 17, 2007. The IRS mailed the NFTL to New York County on April 18, 2007. The IRS then mailed the filing notice to petitioners on April 24, 2007, which is within 5 business days of both April

17 and April 18. The IRS properly notified petitioners of the lien filing.[5]

III. Challenges to the Underlying Tax Liabilities

Petitioners submitted an OIC challenging both collectibility and liability. The IRS concluded that petitioners could pay more than the amount of their offer and that the liability, including additions to tax and interest, had been properly assessed on the basis of petitioners' late-filed tax returns. The IRS rejected petitioners' OIC. Petitioners appealed that rejection. The Appeals Office reconsidered the challenges and entertained a new OIC. During the appeal the Appeals officer confirmed that the IRS properly assessed the liabilities and that petitioners' RCP exceeded their offer amounts. Appeals concluded that petitioners' offers were not acceptable.

Section 6330(c)(2)(B) allows a taxpayer to challenge an underlying tax liability in a collection hearing only if he did not receive any notice of deficiency for the liability and he did not otherwise have an opportunity to dispute the underlying tax

_____

[5] We have made findings as to the relevant dates of the (1) mailing of the NFTL to New York County, (2) mailing of the lien filing notice to petitioners, (3) hearing date request by petitioners, and (4) recordation by New York County. Petitioners did not argue, nor do we conclude, that petitioners were adversely affected by the timing of the recording of the notice of lien since they requested and received administrative review. Further, they filed a timely petition in response to a notice of determination and had a full opportunity for judicial review. See Golub v. Commissioner, T.C. Memo. 2008-122.

liability.  We have previously held that where a taxpayer received a notice of deficiency and did not file a timely petition, an OIC-DATL made during the later collection hearing was a challenge to the underlying tax liability.  Thus, respondent properly refused to consider the underlying tax liability.  Sec. 6330(c)(2)(B); Baltic v. Commissioner, 129 T.C. 178, 183 (2007).

For tax year 1998 petitioners did not receive a notice of deficiency.[6]  For tax year 2000 petitioners received a notice of deficiency but did not file a petition with this Court.  For each tax year petitioners challenged the tax liability with their OIC-DATL submissions before the collection proceeding.

It would appear that an OIC-DATL is an opportunity to dispute the underlying tax liability and that the SO did not abuse her discretion by not considering this challenge.  Sec. 6330(c)(2)(B); see Baltic v. Commissioner, supra; Lewis v. Commissioner, 128 T.C. 48 (2007); Sego v. Commissioner, supra at 609-611; Goza v. Commissioner, supra at 180-181, 183-184.

Even if petitioners could dispute the tax liability as discussed further below (see discussion on interest abatement), petitioners' failure to designate the period to which the $70,000

---

[6] The IRS is not required to issue a notice of deficiency when the assessment is of taxes determined by the IRS or the taxpayer and based on returns filed by the taxpayer.  Montgomery v. Commissioner, 122 T.C. 1, 8 (2004); see also sec. 6201(a)(1).

payment should be applied would result in a denial of petitioners' claim for relief.[7]

IV.  Interest Abatement

In the attachment to the collection hearing request, which petitioners also attached to their petition, petitioners seek relief from interest and additions to tax.[8]  As discussed, section 6330(c)(2)(B) appears to foreclose the challenge to the underlying tax liability, including the additions to tax.[9]

---

[7] Finally, as to petitioners' complaint that the IRS applied some of their subsequent year overpayments to offset the 1998 liability when petitioners would have preferred to offset the 2000 liability, sec. 6402(a) allows the IRS to credit any overpayment to any liability owed by a taxpayer.  Petitioners will not be heard to challenge the IRS's choice of which liability to offset.  See Kalb v. United States, 505 F.2d 506, 509 (2d Cir. 1974).

[8] Petitioners assert that the additions to tax and interest for 1998 should be reduced on account of the erroneous refund of their $70,000 estimated tax payment.  We have found that petitioners filed their 1998 return in 2004.  Respondent assessed and petitioners have not specifically challenged the failure to file addition to tax.

The failure to pay addition to tax accrues at 0.5 percent per month, to a maximum of 25 percent, from the date prescribed for payment of such tax.  Sec. 6651(a)(2).  The maximum failure to pay addition to tax, therefore, accrues in 50 months. Petitioners' 1998 tax payment was due Apr. 15, 1999.  More than 50 months have clearly elapsed since Apr. 15, 1999, even excluding the 19 months during which the IRS held petitioners' $70,000 estimated tax payment.  Respondent has properly assessed the maximum failure to pay addition to tax.

[9] As to the additions to tax, even if petitioners could so challenge, they have not shown reasonable cause or good faith for their failure to timely file or pay their taxes for 1998 or 2000. Thus, they are liable for these additions to tax.  See sec.

(continued...)

However, we will consider whether the IRS abused its discretion in refusing to abate any of the interest on petitioners' 1998 or 2000 liability. We note that because Congress did not intend the interest abatement statute to be used routinely, we grant abatement only "'where failure to abate interest would be widely perceived as grossly unfair.'" Lee v. Commissioner, 113 T.C. 145, 149 (1999) (quoting H. Rept. 99-426, at 844 (1985), 1986-3 C.B. (Vol. 2) 1, 844, and S. Rept. 99-313, at 208 (1986), 1986-3 C.B. (Vol. 3) 1, 208).

A taxpayer may be entitled to an abatement of interest when an unreasonable error or delay in an IRS employee's performing a ministerial or managerial act causes an error or delay in payment of tax. See sec. 6404(e). Transferring a case between IRS offices after a request for transfer has been approved and misplacing a taxpayer's file are managerial acts; unreasonable errors or delays in either may be grounds for abatement of interest. See Palihnich v. Commissioner, T.C. Memo. 2003-297; sec. 301.6404-2(c), Examples (1), (6), Proced. & Admin. Regs.

To qualify for abatement, the taxpayer must show: (1) An error or delay by the IRS in performing a ministerial or managerial act; (2) a correlation between a specific period of delay in payment and an error or delay by the IRS; and (3) that

⁹(...continued)
6651(a)(1) and (2).

the taxpayer would have paid the tax liability earlier but for the IRS's error.  Braun v. Commissioner, T.C. Memo. 2005-221.

Petitioners identified the period between the final rejection of their OIC, on February 9, 2006, and the issuance of a new tax due bill, on March 12, 2007, as a period of unreasonable delay.[10]  However, they have not provided any link between any delay in producing a new tax due bill and their delay in payment.  Petitioners were well aware of the principal amounts due for 1998 and 2000, and they knew the amounts of interest and additions to tax which were due before their filing OICs.  Even though their attempts to compromise their liabilities had failed, they did not pay any of these amounts while waiting for a new bill from the IRS.  Petitioners have not demonstrated that they would have paid their tax liability for 1998 and 2000 earlier but for the IRS's delay in preparing a tax due bill.  See id.

It would not be unfair to hold petitioners liable for the interest on their tax liability.  Petitioners are not entitled to abatement of interest.

---

[10] To the extent that petitioners might seek abatement of interest during the 19 months the IRS had petitioner's $70,000 estimated tax payment, such abatement is foreclosed by sec. 6404(e)(1) and (2).  Petitioners made their estimated tax payment late and did not challenge the refund in 2000 as erroneous on the grounds that they intended the IRS to apply the estimated tax payment to a different year.  Finally, their self-serving testimony is the only evidence they offered of any intent to apply the $70,000 payment toward tax year 1998.

V.  Conclusion

The notice of determination indicates that the SO considered relevant issues petitioners raised, whether the IRS met the requirements of applicable law and administrative procedure, and whether the proposed collection action balances collection efficiency and intrusiveness.  Petitioners did not raise any spousal defenses or pursue any collection alternatives during the collection hearing.  The SO properly determined that petitioners were not entitled to challenge the existence or amount of the underlying tax liability.

The SO satisfied the requirements of sections 6320 and 6330, and we conclude that respondent's decision sustaining the filing of the NFTL was neither erroneous nor an abuse of discretion.

In reaching our holdings, we have considered all the parties' contentions, and to the extent not addressed herein, we conclude that they are irrelevant, moot, or without merit.

To reflect the foregoing,

Decision will be entered for respondent.