T.C. Memo. 2009-216


UNITED STATES TAX COURT



RALPH D. YEOMANS, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 14635-07.                Filed September 17, 2009.



        P was liable for a Federal income tax deficiency for
his 1982 tax year and paid that deficiency on Mar. 13, 2007.
He requested an abatement of all interest that accrued on
the deficiency from Apr. 15, 1983, to Dec. 1, 2006.  R
determined that P was not entitled to interest abatement.  R
now concedes that P is entitled to interest abatement for
the period from Apr. 13, 2005, to Mar. 13, 2007.

        <u>Held</u>:  R's determination that P was not entitled to
interest abatement for the period before Apr. 13, 2005, was
not an abuse of discretion.



Ralph D. Yeomans, pro se.

<u>Michael W. Tan</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

WHERRY, Judge:  Respondent determined a Federal income tax deficiency for petitioner's 1982 tax year.  Petitioner paid the deficiency on March 13, 2007, along with interest that had accrued on the deficiency since April 15, 1983.  In 2006 petitioner requested that respondent abate the interest that had accrued from April 15, 1983, to December 1, 2006.  Respondent denied the request but now concedes that petitioner is entitled to abatement for the period from April 13, 2005, to March 13, 2007.[1]  The issue for decision is whether it was an abuse of discretion for respondent to refuse to abate the interest that had accrued on petitioner's deficiency before April 13, 2005.  We hold that it was not.

FINDINGS OF FACT

Some of the facts have been stipulated, and the stipulated facts and accompanying exhibits are hereby incorporated by this

---

[1]On Apr. 13, 2005, respondent received from petitioner a timely request for a collection due process hearing with respect to petitioner's 1978 and 1981 tax years.  Respondent received another such request with respect to petitioner's 1982 tax year on July 15, 2005.  Respondent concedes that the revenue officer assigned to petitioner's case made an erroneous entry pertaining to the hearing requests in petitioner's case history and that as a result petitioner's case was not forwarded to respondent's Appeals Office for a collection due process hearing.  Respondent further concedes that the failure to forward the case was an error in performing a ministerial act for purposes of sec. 6404(e).  All section references are to the Internal Revenue Code of 1986, as amended and in effect for the year at issue.

reference into our findings.  Petitioner resided in California when he filed his petition.

In 1977 petitioner invested $25,000 in Lyric Leasing Associates (Lyric Leasing), one of many partnerships syndicated by Klineman Associates, Inc. (KAI).  Like other KAI partnerships, Lyric Leasing reported losses in its early years and phantom income in its later years.  As a partner, petitioner reported his distributive share of Lyric Leasing's losses and income on his personal Forms 1040, U.S. Individual Income Tax Return.

In or around 1980 respondent grew suspicious of the losses and began auditing KAI partnerships, including Lyric Leasing.  Respondent was particularly concerned with, and sought to disallow, the losses Lyric Leasing reported in 1977, 1978, 1980, 1981, and 1982, shares of which petitioner claimed on his own returns for at least 4 of those years.  Petitioner agreed to extend the period of limitations during which respondent could assess tax against him for those years.

Kent M. Klineman, Lyric Leasing's general partner, advised petitioner by letter dated May 30, 1984, that if respondent disallowed those losses he could be eligible for a refund of the taxes he paid on Lyric Leasing's phantom income in subsequent years.  Mr. Klineman suggested that petitioner file protective claims for refund in case respondent's audit continued beyond the deadline for filing refund claims.  Petitioner, however, does not

appear to have filed any of the suggested protective refund claims.

In 1983 Mr. Klineman informed petitioner that the audits of KAI partnerships syndicated before 1976 would be resolved by a test case in the Tax Court involving Wyatt Leasing Associates and investors named Pearlstein, Pearlstein v. Commissioner, docket Nos. 5551-81 and 5552-81. The audits of KAI partnerships syndicated after 1975, including Lyric Leasing, would be held in abeyance pending the resolution of Pearlstein.

In 1988, while Pearlstein was still pending, respondent's Appeals Office submitted a settlement offer to petitioner. Petitioner did not respond to the offer.

On November 16, 1989, the Tax Court issued an opinion in Pearlstein v. Commissioner, T.C. Memo. 1989-621. Mr. Klineman then informed petitioner that a Tax Court case called Thornock v. Commissioner, docket No. 29123-86, would resolve the audits of KAI partnerships syndicated after 1975, including Lyric Leasing.

On March 19, 1990, the Tax Court ruled against the taxpayer in Thornock v. Commissioner, 94 T.C. 439 (1990). Soon thereafter respondent issued statutory notices of deficiency for petitioner's 1977, 1978, 1981, and 1982 tax years. Petitioner's attorney, Stephen D. Gardner, on July 12, 1980, timely petitioned the Tax Court on behalf of petitioner with respect to those years (docket No. 15665-90).

On August 9, 1991, respondent submitted a revised settlement offer to petitioner's attorney. With respect to phantom income the offer provided that "Eighty-five percent (85%) of phantom income which was included in the taxpayer's gross income as ordinary income and which does not represent actual cash or property received by the taxpayer may be eliminated from gross income in the taxable year reported." In an October 14, 1991, letter petitioner informed Mr. Gardner that he would accept the offer if respondent agreed to several additional conditions.

Respondent later sent Mr. Gardner a proposed Form 906, Closing Agreement On Final Determination Covering Specific Matters, which Mr. Gardner forwarded to petitioner on August 26, 1992. On the issue of phantom income the closing agreement provided as follows:

> (9) That any income in excess of the 15% of the phantom income required to be included in the taxpayers' gross income with respect to the partnership which was included in the taxpayers' gross income as ordinary income and which does not represent actual cash or property received by the taxpayers (i.e., phantom income) may be eliminated in the taxable year reported, if the statute of limitations remains open, or will be treated as a deduction from ordinary income in the latest taxable year, prior to the signing of this agreement, for which a Federal income tax return has not been filed, determined as of the date the taxpayer(s) herein sign this closing agreement.

Petitioner did not immediately take action with respect to the closing agreement.

On November 12, 1992, Mr. Klineman notified petitioner that Thornock v. Commissioner, supra, had not been appealed because of "personal considerations relating exclusively to Mr. Thornock" but that the U.S. Courts of Appeals for the Second and Sixth Circuits were split on the issue decided in that case. See Waters v. Commissioner, 978 F.2d 1310 (2d Cir. 1992), affg. T.C. Memo. 1991-462; Emershaw v. Commissioner, 949 F.2d 841 (6th Cir. 1991), affg. T.C. Memo. 1990-246. Mr. Klineman indicated that he had rejected respondent's partnership-level settlement offer for KAI partnerships syndicated after 1975 and that respondent had subsequently begun to make settlement offers to individual partners.

On February 16, 1993, Mr. Gardner's office warned petitioner that respondent would consider him to have "reconsidered" and "rejected the settlement" offer made in August 1991 if he did not execute and submit respondent's proposed closing agreement. Mr. Gardner's office also informed petitioner that "In order to comply with the Government's deadline, we must receive proper authorization [to execute the closing agreement and other documents on petitioner's behalf] by April 1, 1993."

In an April 8, 1993, letter petitioner authorized Mr. Gardner to execute the necessary documents on his behalf and included deficiency calculations to support his settlement

position. The letter also indicated that the final resolution of his case should provide that

> eighty-five percent (85%) of phantom income which was included in the taxpayer's gross income as ordinary income and which does not represent actual cash or property received by the taxpayer may be eliminated from gross income in the taxable year reported. Any excess will be carried over as a deduction in the next year, and any other subsequent year, if necessary.

Mr. Gardner's office informed petitioner in an October 4, 1993, letter as follows: "You are deemed to have rejected the Thornock offer (cash + 15%). In addition, your 'authorization' to settle, aside from being a week late, contained deficiency numbers far different from those provided by District Counsel."

Over 4 years later, in a January 23, 1998, letter, Mr. Gardner's office informed petitioner that the Tax Court had ruled against the taxpayer in Whitmire v. Commissioner, 109 T.C. 266 (1997), affd. 178 F.3d 1050 (9th Cir. 1999). Mr. Gardner and respondent had agreed that Whitmire would resolve one of the issues involved in petitioner's case. The letter advised that, in light of Whitmire, petitioner's chances for a successful outcome were increasingly dim:

> Ultimately, the decision as to whether or not to settle is your own. Obviously, you have the right not to accept a settlement at this time, instead pinning your hopes on a successful appeal in Whitmire. The odds of a successful appeal given the current case law, however, are not encouraging.

On May 6, 1998, Mr. Gardner's office forwarded petitioner another proposed closing agreement from respondent. Sometime in

1999 respondent informed Mr. Gardner that petitioner's signed decision documents and closing agreements had not been received. Respondent further advised that, if petitioner did not sign and return these documents to settle the case in time for them to be received by respondent within 60 days, respondent would ask the Court to dispose of it in accordance with Whitmire v. Commissioner, supra, and Thornock v. Commissioner, 94 T.C. 439 (1990). Respondent warned that if the Court disposed of petitioner's case in that manner, he might not be entitled to eliminate any phantom income attributable to Lyric Leasing. Mr. Gardner's office relayed respondent's warning to petitioner in a letter petitioner received--according to his hand-written note-- on June 17, 1999.

On February 23, 2000, petitioner executed respondent's proposed closing agreement. Under the closing agreement some of the losses petitioner claimed in his 1977, 1978, 1981, and 1982 tax years were disallowed but petitioner was allowed to eliminate phantom income "in the taxable year reported, if the statute of limitations remains open" or to deduct it "from ordinary income in the latest taxable year, prior to the signing of this agreement, for which a Federal income tax return has not been filed". On March 29, 2000, the Tax Court entered a stipulated decision in petitioner's original Tax Court case (docket No. 15665-90).

Despite the terms of the closing agreement petitioner did not claim any of the phantom income as a deduction on his 1999 Federal income tax return as the closing agreement permitted him to do. Instead, on or around September 13, 2000, petitioner engaged a certified public accountant, Heinz Hercher, to prepare amended returns for his 1977 through 1988 tax years.

In a September 13, 2000, engagement letter Mr. Hercher advised petitioner that "the work you are asking me to do may not be the appropriate procedure to follow" and that "I can give no assurances that any of the amended returns to be prepared will be accepted as I have serious questions about the statute of limitations on these years." In addition Mr. Hercher observed as follows: "The files contain a Protective Claim filed on a form 1040-X in August 1984. The Protective claim is for items related to Lyric Leasing. I do not know if this claim was actually filed, nor if filed, was done properly in order to extend the statute." On October 11, 2000, petitioner sent respondent the amended returns that Mr. Hercher prepared for tax years 1977 through 1988.

In a December 22, 2000, letter respondent notified petitioner in regard to the closing agreement that "you are entitled to a deduction of $0 on your 1999, return." Respondent indicated that the "Gain reported in barred statute years" was zero for 1979, 1980, 1983, 1984, 1985, and 1986. The letter also

stated the following:  "If you disagree with the amount of the deduction as determined by us and you wish to have it corrected, please send in copies of original returns, amended returns and related K-1s within 10 days from the date of this letter."  There is no indication that petitioner responded to the December 22, 2000, letter.

In a February 5, 2001, letter respondent informed petitioner that his amended returns for tax years 1978 through 1988 could not be processed.  Respondent explained that (1) tax years 1978, 1981, and 1982 had been decided by the Tax Court; (2) before the amended tax returns were filed "the statute of limitations for refund (IRC 6511)" had expired for 1979, 1984, and 1988; (3) "the statute of limitations for assessment" had expired for 1985 and 1987; and (4) petitioner had not requested tax adjustments for 1980, 1983, and 1986.

Petitioner responded on February 12, 2001.  He asserted that "As the case was being decided in the courts between Lyric Leasing Associated * * * and the Internal Revenue Service for over 20 years, the statute of limitations for all the years from 1977 through 1988 remained open."  He further stated:

> On October 11, 2000 we sent a copy of the Closing
> Agreement and all amended returns for the years 1977
> through 1988 which we signed on February 23, 2000 with
> the understanding that the statute of limitations would
> remain open for the above years, otherwise we would
> have contested the agreement without signing it.

Respondent replied with a March 13, 2001, letter reiterating respondent's position on the tax years in question and indicating that, pursuant to the closing agreement, any phantom income should have been treated as a deduction "in the latest taxable year prior to signing the agreement which had not yet been filed at the time of the agreement (probably your 1999 tax return)."

On August 15, 2000, respondent sent petitioner notices of balance due for tax years 1978, 1981, and 1982. On September 4, 2000, respondent sent petitioner a letter indicating that he was due a refund of $766.97 for 1977. Respondent sent petitioner subsequent bills for his 1978, 1981, and 1982 tax liabilities on October 30, 2000, February 26, 2001, August 4, 2003, and August 9, 2004.

On April 23, 2005, respondent referred the matter to a revenue officer to collect the outstanding tax liabilities for 1978, 1981, and 1982. Petitioner eventually paid the outstanding tax liabilities on March 13, 2007.

On or around August 1, 2006, before paying the liabilities, petitioner requested that respondent abate the interest that had accrued on his 1982 deficiency from April 15, 1983, to December 1, 2006. Respondent rejected that request on December 15, 2006. On February 1, 2007, respondent issued a final determination denying petitioner's request for interest abatement with respect to his 1982 tax year. Respondent explained that abatement was

not warranted because "There was no error or delay relating to the performance of a ministerial act by an employee of the Internal Revenue Service."

Petitioner, on July 23, 2007, filed a timely petition with the Tax Court with respect to respondent's February 1, 2007, determination letter. In the petition, petitioner states:

> I would like the IRS to honor the agreement/contract that they entered into with my wife and I. This contract has not been fully executed as the IRS has taken their share plus interest without consideration. A contract is not valid unless both sides give up something. My wife and I are the only side that has given up anything. We were not allowed to have the taxes paid returned on the phantom income for the years of 1981-1988 plus accrued interest, therefore the contract has never been fully executed and this matter has been going on for 25 years. The interest accrued that the IRS took from us is very nearly the same amount that I stand to recover if I am allowed my consideration offered by the IRS in the agreement. By doing so, the contract will have honored and this matter will be finished.

## OPINION

Interest on a Federal income tax deficiency generally accrues at the rate specified by section 6621 from the last date prescribed for payment until the date on which the tax is paid. Sec. 6601(a). Under section 6404(e)(1) the Secretary may abate all or any part of that interest to the extent it accrued because of "any error or delay by an officer or employee of the Internal Revenue Service (acting in his official capacity) in performing a

ministerial act".[2]  An error or delay will be taken into account only if no significant aspect of it is attributable to the taxpayer involved and it occurs after the Internal Revenue Service (IRS) has contacted the taxpayer, in writing, with respect to the deficiency or payment of tax on which the interest is accruing.  Sec. 6404(e)(1); sec. 301.6404-2T(a)(2), Temporary Proced. & Admin. Regs., 52 Fed. Reg. 30163 (Aug. 13, 1987).

Even when there is an error or delay with respect to a ministerial act, the Secretary has discretion to decide whether to abate interest.  Sec. 6404(e); see Grandelli v. Commissioner, T.C. Memo. 2008-55.  We have jurisdiction under what is now designated section 6404(h) to determine whether the Secretary's

_____

[2]Sec. 6404(e)(1) applies to interest accruing with respect to deficiencies or payments for tax years beginning after Dec. 31, 1978.  Tax Reform Act of 1986, Pub. L. 99-514, sec. 1563(b), 100 Stat. 2762; see Coco v. Commissioner, T.C. Memo. 2001-80.  In 1996 Congress amended sec. 6404(e)(1) to refer to "unreasonable" errors or delays and "ministerial or managerial" acts.  Taxpayer Bill of Rights 2 (TBOR 2), Pub. L. 104-168, sec. 301(a), 110 Stat. 1457 (1996); see Hinck v. United States, 550 U.S. 501, 505 n.1 (2007).  Those amendments apply only to interest accruing with respect to deficiencies for tax years beginning after July 30, 1996.  TBOR 2 sec. 301(c), 110 Stat. 1457; Hinck v. Unites States, supra at 505 n.1.  Because this case involves interest accruing with respect to a deficiency for petitioner's 1982 tax year, sec. 6404(e)(1) applies but the amendments made to that section in 1996 do not.

A ministerial act is a procedural or mechanical act that does not involve the exercise of judgment or discretion and occurs during the processing of a taxpayer's case after all the prerequisites to the act, such as conferences and review by supervisors, have taken place.  See Lee v. Commissioner, 113 T.C. 145, 149-150 (1999); sec. 301.6404-2T(b)(1), Temporary Proced. & Admin. Regs., 52 Fed. Reg. 30163 (Aug. 13, 1987).

decision not to abate interest was an abuse of discretion.[3]  The taxpayer bears the burden of proving that the Secretary acted arbitrarily, capriciously, or without sound basis in fact or law. See Woodral v. Commissioner, 112 T.C. 19, 23 (1999).  To meet this burden the taxpayer must establish (1) an error or delay by the IRS in performing a ministerial act, (2) a correlation between any such error or delay and a specific period of delay in payment, and (3) that the taxpayer would have paid the deficiency earlier but for the error or delay.  See Sher v. Commissioner, T.C. Memo. 2009-86.

It is clear from his petition and briefs that petitioner is not particularly interested in interest abatement.  His focus lies, as it has for nearly three decades, on recovering the tax he paid on Lyric Leasing's phantom income in the years following 1982--the tax year at issue in this case.  Having missed his opportunity to recover any portion of that tax, petitioner's long and somewhat quixotic pursuit has led him here.

---

[3]The Court was granted this jurisdiction in 1996 as part of TBOR 2 sec. 302(a), 110 Stat. 1457.  Sec. 6404(h) applies to requests for interest abatement submitted after July 30, 1996, regardless of the tax year involved.  TBOR 2 sec. 302(b), 110 Stat. 1458; Hinck v. United States, supra at 504-505.  Although the exact date of petitioner's request for interest abatement is unclear, there is no dispute that it was submitted after July 30, 1996.  In addition the parties do not dispute that petitioner satisfies the requirements of sec. 7430(c)(4)(A)(ii). Accordingly we have jurisdiction to review respondent's determination not to abate interest.

His primary argument is as follows: (1) He accepted respondent's August 9, 1991, settlement offer, (2) that offer allowed him to file amended Federal income tax returns for the years in which he reported Lyric Leasing's phantom income, (3) respondent breached the settlement agreement by rejecting the amended returns he submitted on October 11, 2000, and (4) the Court should order respondent to honor the settlement agreement and reexamine his amended returns. As a second-best alternative petitioner requests abatement of interest because the amount of interest he paid is nearly the same as the amount of tax he paid on phantom income.[4]

In his brief petitioner alludes to section 6404(e)(1) by alleging that respondent committed a number of errors, such as (1) breaching the 1991 settlement agreement by refusing to accept his amended returns in October 2000; (2) adding language to the closing agreement forwarded to petitioner on August 26, 1992, which was not included in the August 9, 1991, settlement offer, prohibiting petitioner from eliminating phantom income in the year reported if the period of limitations was closed; (3)

---

[4]Petitioner requested an abatement of all the interest that accrued with respect to his 1982 deficiency. We have held that such a request does not establish the necessary correlation between an error or delay by the Internal Revenue Service and a specific period of delay in payment by the taxpayer. See Guerrero v. Commissioner, T.C. Memo. 2006-201 ("A request demanding abatement of all interest charged does not satisfy the required link; it merely represents a request for exemption from interest.").

refusing to acknowledge that he filed a protective refund claim in 1984, and (4) preventing petitioner from deducting a portion of the tax he paid on Lyric Leasing's phantom income on his 1999 income tax return, as advised by respondent's December 22, 2000, letter. At no time, however, does petitioner attempt to explain why or whether any of these alleged errors forced him to delay paying his 1982 income tax deficiency until March 13, 2007. Nor does petitioner assert that he would have paid the deficiency sooner if not for the alleged errors.

As we explained to petitioner at trial, our jurisdiction in this case is limited to the issue of interest abatement with respect to petitioner's 1982 income tax deficiency. We do not have jurisdiction to order respondent to review petitioner's amended returns or to refund the tax he may have paid on phantom income in the 1980s. Moreover, we are not a court of equity and cannot ignore the law to achieve an equitable end. See Scarangella v. Commissioner, T.C. Memo. 1969-13 ("But, as appealing as his cause may be, this is not a court of equity. We have no equity powers and we cannot grant relief on such grounds."), affd. per curiam 418 F.2d 228 (3d Cir. 1969). At best petitioner may be entitled to recover a portion of the interest he paid on his 1982 deficiency. To do so, however, he must establish that respondent abused his discretion by refusing to abate interest. Petitioner has not met his burden.

First, some of the errors alleged by petitioner do not appear to be errors. For example, respondent could not have breached a 1991 settlement agreement with petitioner because no such agreement was ever reached. Instead, petitioner hedged his bets. By proposing new terms petitioner rejected respondent's August 9, 1991, settlement offer and made a counteroffer. See Steffler v. Commissioner, T.C. Memo. 1995-271 ("Mutual assent is a prerequisite to the formation of a contract. * * * Expression of assent that changes the terms of the offer in any material respect is not an acceptance, but may be operative as a counteroffer. * * * A counteroffer terminates the power of acceptance of the original offer.").

Moreover, petitioner never executed a closing agreement with respect to that offer. Although petitioner is correct that closing agreements are not necessary to settle a case once it is docketed in the Tax Court, we have held that closing agreements are necessary when, as here, the settlement offer provides that a closing agreement will be executed. See Cinema '85 v. Commissioner, T.C. Memo. 1998-213. Finally, because petitioner never assented to either the August 9, 1991, settlement offer or the related closing agreement, his argument that respondent erred by adding language to the closing agreement carries little persuasive weight.

Second, and more importantly, petitioner has failed to establish, or even suggest, that any errors respondent may have committed are related to a specific period of delay in petitioner's payment of his 1982 deficiency or that petitioner would have paid his deficiency earlier if not for any such errors. We are left to speculate why petitioner waited until March 13, 2007, to pay his 1982 Federal income tax deficiency. Petitioner was ostensibly withholding payment until respondent refunded the tax he paid on Lyric Leasing's phantom income during the 1980s--a condition precedent imposed not by the Federal tax laws but by petitioner himself. If this is the case, then petitioner's delay in payment was of his own volition and not the consequence of any error committed by respondent.[5] While it is possible that petitioner might have paid his 1982 deficiency sooner had respondent promptly refunded the tax he paid on phantom income, this misses the point. Even if respondent had erred by not providing a prompt refund--an assertion that is wholly unsupported by the record before us--petitioner cannot establish entitlement to interest abatement simply because he chose to withhold payment pending a refund.

---

[5]Although respondent's Dec. 22, 2000, letter indicating petitioner was "entitled to a deduction of $0 on your 1999, return" does appear to be confusing and perhaps misleading, if a settlement were to occur, petitioner has not explained how the letter is related to his delay in payment. We are skeptical that there is any relationship, particularly given the fact that petitioner never attempted on his 1999 Form 1040 to claim a deduction of the tax he paid on phantom income.

For these reasons, despite the underlying fact that petitioner has paid tax on phantom income which has an element of unfairness, petitioner has failed to prove that respondent's refusal to abate interest was an abuse of discretion.  If this was a de novo proceeding, and had the statute not specified an abuse of discretion standard, this Court might have been more generous, but by law that is not the standard of review to be employed here.

The Court has considered all of petitioner's contentions, arguments, requests, and statements.  To the extent not discussed herein, we conclude that they are meritless, moot, or irrelevant.

To reflect the foregoing,

<u>Decision will be entered</u>

<u>for respondent</u>.